SOUTHWESTERN SHIPBUILDING CO. *v.* UNITED STATES (No. 2379)[1]

CONSTRUCTION, PARAGRAPH J, SUBSECTION 5, SECTION IV, TARIFF ACT OF 1913—MATERIALS FOR AMERICAN VESSELS—"OUTFIT AND EQUIPMENT."

Paragraph J, subsection 5, Section IV, tariff act of 1913, contemplates the construction of the vessel as one thing, the building of its machinery as another, and its outfit and equipment as something else. Necessarily, therefore, the materials which go into the construction of the vessel, the materials which are necessary for the building of its machinery, and the *articles* necessary for *its* outfit and equipment must be regarded as separate and distinct tariff entities.

[1] T. D. 40934.

Portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, or for the proper navigation or safety of a vessel, and not sea stores or a part of the hull or propelling machinery, come within the designation "outfit and equipment." Furniture and furnishings necessary or suitable to make the vessel habitable and reasonably comfortable for those on board, considering the service in which the vessel is engaged or is to be engaged, things necessary to keep the vessel in order and repair and to safeguard as far as possible crew and passengers from the perils of the sea are, therefore, included. Sea stores, that is to say, a reasonable quantity of provisions and supplies for the consumption, sustenance, and medical needs of crew and passengers, have long been judicially and legislatively distinguished from "outfit and equipment," and are excluded. Certain articles named in the opinion are held to be free under the paragraph as "outfit and equipment," and, as to the other articles involved, the evidence is found insufficient to overcome the presumed correctness of the collector's classification otherwise.

## United States Court of Customs Appeals, May 11, 1925

APPEAL from Board of United States General Appraisers, G. A. 8727 (T. D. 39064)

[Modified.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson,* special attorney, of counsel), for the United States.

[Oral argument March 30, 1925, by Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

A great number of articles of different kinds, imported at the port of Los Angeles, were assessed for duty under various provisions of the tariff act of 1913. The importer protested that the goods were free of duty under paragraph J, subsection 5, of Section IV of the tariff act of 1913, which reads as follows:

PAR. J, subsec. 5. That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles necessary for their outfit and equipment, may be imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

The Board of General Appraisers overruled the protest and the importer appealed.

It is not disputed that the articles in issue were imported for installation on three vessels which were under construction in this country and designed for use as tankers.

The importer admits that, if the goods are not entitled to free entry, they were properly classified and subject to the duty assessed by the collector.

If the articles be "outfit and equipment" it is not contended by the Government that they were excessive in quantity or more than was required to outfit and equip the vessels.

Paragraph J, subsection 5, of Section IV, contemplates the construction of the vessel as one thing, the building of its machinery as another, and its outfit and equipment as something else. Necessarily, therefore, the materials which go into the construction of the vessel, the materials which are necessary for the building of its machinery, and the *articles* necessary for its outfit and equipment must be regarded as separate and distinct tariff entities. *Toledo Ship Building Co.* v. *United States*, 8 Ct. Cust. Appls. 342, at pp. 343, 344, T. D. 37609.

We are not concerned in this case with the materials for constructing a vessel or for building its machinery. We are called upon to determine only what constitutes its *outfit and equipment* within the meaning of the paragraph to which we have just referred and to decide whether the articles involved in the protest or any of them are covered by that designation.

Prior to 1872 articles of equipment *for vessels in course of construction and materials for making ship's equipment*, were not, as such, exempt from duty and were subject to duty unless exempt under some other designation. Section 10 of the act of 1872, section 2510 of the act of 1883 and section 8 of the act of 1890, admitted free of duty certain eo nomine *designated materials* for the construction and equipment of vessels built in the United States for the foreign trade.

After the passage of section 8 of the act of October 1, 1890, the Treasury Department requested the Naval Board of Construction, of which George Dewey, Chief of the Bureau of Equipment, was president, to define the word equipment. Responding to that request the Naval Board of Construction reported as follows:

Equipment, used in a general sense, may be defined as any portable thing that is used for, or provided in, preparing a vessel, whose hull is already finished for service. It is the furniture of whatsoever nature which is put into a finished ship in equipping her. The Queen's Regulations and Admiralty Instructions give the following definition: "Equipment, in relation to a ship, includes the furnishing a ship with any tackle, apparel, furniture, provisions, arms, munitions or stores, or any other thing that is used in or about a ship for the purpose of fitting or adapting her for the sea or for naval service."

In estimating the displacement of a ship, naval constructors use the term "hull and fittings" in contradistinction to "equipment," the fittings of the hull being understood to be any permanent thing attached to the hull which would remain on board were the vessel to be laid up for a long period.

Adopting these definitions, the board is of the opinion that the term equipment would not include donkey engines, pumps, windlasses, steam steerers, and other machinery, but that it would include anchors, chain cables, boats, life-saving apparatus, nautical instruments, signal lights, and similar articles. (27 Atty. Gen. Opinions, 228, 238.)

Section 7 of the act of 1894, section 12 of the act of 1897, and section 19 of the act of 1909, extended the benefit of the free list not only to all articles necessary for the equipment of vessels, but to all articles necessary for their outfit.   The Treasury Department, in its regulations of 1908, defined equipment as follows:

The equipment of a vessel is that which prepares her for a voyage, as rigging, sails, anchors, cables, chains, etc.   The provision regarding "equipment" does not cover articles used as "supplies."   (Customs Regulations, 1908, articles 726, 756.)

The department did not define or attempt to define outfit.

Section 5 of the Panama Canal act, which was passed on August 24, 1912, provided:

That all materials of foreign production which may be necessary for the construction or repair of vessels built in the United States and all such materials necessary for the building or repair of their machinery and all articles necessary for their *outfit and equipment* may be imported into the United States free of duty under such regulations as the Secretary may prescribe.

The term "outfit and equipment" as used in section 5, was defined by the Treasury Department in November, 1912, as follows:

The term "outfit and equipment" is defined as including portable articles necessary or appropriate for the navigation, operation, or maintenance of a vessel, and not permanently incorporated in its hull or machinery, and not constituting consumable supplies.   The term includes, therefore, anchors, chains, cables, tackle, boats, repair parts, life-saving apparatus, wireless-telegraph apparatus (except the motor generator), nautical instruments, searchlights, signal lights, lamps, furniture, carpets, table linen, tableware, bedding, arms and munitions, and also articles to be used in renewal or replacement of articles of original outfit and equipment.   T. D. 32956.

In May, 1913, the Treasury Department, in a resumé of its published and unpublished decisions under said section 5, announced that towels and sheets, electric-light bulbs and fixtures, bathtubs, flexible metal hose, table linen, bed linen, even if marked with a monogram, constituted articles of "outfit and equipment."   T. D. 33386.

After the passage of paragraph J, subsection 5 of Section IV of the act of 1913, the Treasury Department again defined *outfit and equipment* as follows:

The term "outfit and equipment" is defined as including portable articles necessary or appropriate for the navigation, operation, or maintenance of a vessel, but not permanently incorporated in or permanently attached to its hull or propelling machinery, and not constituting consumable supplies.   The term includes, therefore, anchors, chains, cables, tackle, boats, repair parts, life-saving apparatus, nautical instruments, signal lights, lamps, furniture, carpets, table linen, tableware, bedding, arms, and munitions.   T. D. 34150.

As ordinarily understood, the term "outfit and equipment" considered together, includes everything requisite to properly perform a service or to properly accomplish some definite object or purpose

For "outfit" see Standard Dictionary. For "equipment" see Standard Dictionary and *Rubey* v. *Coal & Mining Co.*, 21 Mo. Appls. 159, 169; *People* v. *St. Louis, Alton & Terre Haute Railroad Co.*, 176 Ill. 512, 522; *National Bank* v. *G. C. & S. F. Ry. Co.*, 95 Tex. 176, 183; *Oppenheimer* v. *Greencastle School Tp.*, 164 Ind. 99, 103; *United States Rubber Co.* v. *American Bond Co.*, 86 Wash. 180, 182. Taking into account the definition given by the Naval Board and the Treasury Department of "equipment," the several definitions given by the Treasury Department of "outfit and equipment," and the ordinary meaning of that term, we are satisfied that portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, or for the proper navigation or safety of a vessel, and not sea stores or a part of the hull or propelling machinery, come within the designation "outfit and equipment." Furniture and furnishings necessary or suitable to make the vessel habitable and reasonably comfortable for those on board, considering the service in which the vessel is engaged or is to be engaged, things necessary to keep the vessel in order and repair and to safeguard as far as possible crew and passengers from the perils of the sea are therefore free of duty under the provisions of paragraph J, subsection 5. Sea stores—that is to say, a reasonable quantity of provisions and supplies for the consumption, sustenance, and medical needs of crew and passengers during the voyage—are excluded from that paragraph for the reason that the distinction between sea stores and ship's stores or outfit and equipment has been for a long time judicially and legislatively firmly established. See sec. 22 of the act of August 4, 1790, 1 Stat. 161; sec. 17, act of March 3, 1897; protest of *Cunard Steamship Co.*, T. D. 21324; protest of *Ali*, T. D. 22433; *United States* v. *One Hempen Cable*, 27 Fed. Cas. 264, 265; *United States* v. *24 Coils of Cordage*, 28 Fed. Cas. 276–278; *United States* v. *23 Coils of Cordage*, 28 Fed. Cas. 290–292.

We are of the opinion that the evidence in the case and the definitions cited warrant us in holding that the protest should have been sustained as to the following articles imported for the "outfit and equipment" of the three tankers hereinbefore mentioned:

Towels for glasses, handspikes, boat staves, dusters, coal baskets, revolvers, cartridges for the same, galvanized buckets, hatch wedges to hold tarpaulins on hatches, holystones, hand scrubs, wire steel brooms for cleaning machinery, hose coupling keys for fastening hose to hydrants, brass door hooks, boat axes, needles for lifebelts, coir brooms, maul for opening and closing water-tight doors, rope measure, chain hooks for handling anchor chains, paint brushes, paint strainers, large brasswork tins, paint pots, woodman's ax for use in case of fire, metal match boxes with brass padlocks, dustpans, lamp glasses, galvanized buckets for fires and cleaning, canvas, tarpaulin, duck canvas, windsail hoops, hawser, manila rope, galvanized steel wire ropes, special rope for boat falls, coir mooring springs, shackles for coir springs, boat lacings, log lines, signal halyards, fishing lines and hooks for use of crew if compelled to abandon ship, galvanized flexible steel wire

ropes, fuse wire, compasses, oil measurers, steel tape measure, blow lamp, tin handlamps, condenser tube drawers, oil fillers, oil feeders, triangular scrapers, glass salinometers, brass salinometers, feedwater thermometers, portable cable lamps, hydrometers for liquid fuel, voltmeter for handlamps, packing sticks, chain blocks, cable coupling bolts, marlinespikes for splicing wire, pot scrubs, lead-melting pot and ladle, vises, bench vise, Clyburn spanner, Smith tongs, packing screws, tube expander for tubes, brass tap for oil barrel, bench for portable vise, sledge hammer, clawfoot spanners, drilling knees, screw jack, shackles, ash hoist wire, ash buckets, bags, barrels and baskets, firing rakes, firing slices, coal shovels, pump for oil drum, drilling machine, surface plate with handles, grindstone and trough, swage blocks, wheelbarrow, galvanized iron tank with lock-up lid, tube stopper rods, patent tube stoppers, coal hammers, crowbars, canvas fire hose, screw augers, buttons for tube stopper rods, chain sling, steelyard, telescopic gauge, gauge glass cutter, tube brush rods, tube scraper, scaling slices for boilers, firebar tongs, coir mats, turbine, laundry books, chronometer rate books, log books, cash receipt book, water well and brush, letter files, hanging files for receipts, punch for letter files, rubber date stamp, chart cleaners, manifest forms, store lists, pads headed memorandum forms, large linen envelopes, ordinary envelopes, disbursement sheets, victualing forms, noon position pads, harbor portage bills, overtime sheets, crew lists, repair lists, lifeboat inventories, pads conduct reports, deck-log abstracts, night order books, compass deviation books, bevel edge ruler, straight ruler for charts, chart dividers, Field's parallel rulers, parallel rulers for lifeboats, small dividers for lifeboats, ink bottles, disbursement books, small wages books, merchant's shipping act, trip provision book, receipt books, linen statements, seaman's wage books, rubber stamp, case for ships' papers, work books, pads repair lists, pads fuel and conduct reports, bunker statements, inkstand, pillow slips, counterpanes, bolster covers, white blankets, mattresses, mattress covers, tablecloths, white zinc, ash bars, crate, marlinespikes, coat hooks, coupling keys, boat axes, oak water funnels, chain hooks, feather duster, manila rope, coir mooring spring, twine, set of stencil letters and figures, filter cloth, binding cord, resin, lump chalk, oil fillers, Kaye's oil feeders, copper oil funnels, whitewash brushes, hydrometers for liquid fuel, voltmeter, lead-melting pot and ladle, set of hammers, tube expander, brass top for oil barrel, clawfoot spanners, box spanners, back end rakes, Morse valve facing and reseating machine, chronometer, rate books, press, punch for letter files, chart cleaners, crew lists, lifeboat inventories, pads deck port sheets, indicator paper, Skein's indicator cord, soldering fluid, gas wrenches, chain pipe wrench, hatchet, capstan bars, portable cable-connecting boxes, ram hammer with eyebolt, surface plate, brass gauge, glass lamps, bellows for dynamo, flexible steel hose, fire extinguishers, fire clay, counterpanes, mattress extension pieces, serviettes, store lists, galvanized squeeges, handcuffs, sash tools, mast knives, keg graphite, hacksaw frame, gimlets, lamp scissors, spokeshave, electric handlamp bulbs, hand saw, scales, wall plugs and bases, tumbler switches, drilling pillars, sledge hammers, beam clamps, chisels, Brown's provision books, night order books.

The uses of the other articles involved in the case are not definitely disclosed by the testimony and we know nothing about them. As to such articles we must hold that the presumption of correctness attaching to the collector's classification has not been overcome and that as to them the protest should be overruled.

The judgment of the board is therefore reversed as to the articles hereinbefore specifically designated as entitled to free entry and as to all other articles or things it is affirmed. *Modified.*